Richard TARBERT

v.

INGRAHAM COMPANY.

Gene C. WHEATLEY

v.

INGRAHAM COMPANY.

Civ. A. Nos. 7440, 7441.

United States District Court
D. Connecticut.

Oct. 21, 1960.

Mitchel Garber, New Haven, Conn., for plaintiffs.

Frederick W. Beach, Beach, Calder & Barnes, Bristol, Conn., Joseph Adinolfi, Jr., Schatz & Schatz, Hartford, Conn., for defendant.

J. JOSEPH SMITH, Circuit Judge (sitting by designation).

The present actions stem from personal injuries received by the two plaintiffs as a result of the alleged premature explosion of an artillery shell at Camp Breckenridge, Kentucky on August 21, 1957. Plaintiffs were members of a gun crew then participating in National Guard summer training activi-

ties. Defendant was the manufacturer of a fuse and timing device on the exploding shell which plaintiffs claim caused their injuries.

The complaint was originally drafted in two counts, one on the breach of an implied warranty, and the other on the alleged negligence of defendant in the manufacture of the fuse. Ingraham Company now moves for a summary judgment on both counts while plaintiffs seek permission to amend their complaints by the addition of a paragraph alleging a continuing negligent failure to label or warn of the dangerous propensities of the fuse in question.

The affidavit of C. M. Ingraham, Secretary-Treasurer of the defendant, states that The Ingraham Company has not manufactured or sold any of the type fuse involved, M500 A1, since August 24, 1954—and that the particular lot which included the allegedly defective fuse in issue was completely manufactured, processed and sold by August 20, 1953. This sworn statement is uncontroverted by the plaintiffs. Defendant is entitled to a summary judgment on the negligence count as it is clearly barred by the statute of limitations,[1] Sec. 52–

---

1. The Connecticut Statute of Limitations formerly applicable to this type of action, Sec. 8324 of Conn.Gen.Stats., 1949 Revision, provided that "No action to recover damages for injury to the person * * * caused by negligence * * * shall be brought but within one year from the date of the act or omission complained of * * *".

It was held by a divided panel of the Second Circuit Court of Appeals, Judge Frank dissenting, that the aforestated statutory language must be strictly construed to start the running of the limitation period at the time of the completion of the sale, by the defendant manufacturer, of an allegedly faulty rifle. The result was that the statute of limitations had run three years before plaintiff was injured. Dincher v. Marlin Firearms Co., 2 Cir., 1952, 198 F.2d 821. Four years later the Connecticut Supreme Court of Errors reached the same conclusion in construing that statute in Vilcinskas v. Sears, Roebuck & Co., 1956, 144 Conn. 170, 127 A.2d 814, where the action was held to have been barred al-

most two years before the accident occurred.

The Connecticut Legislature, in 1957, moved to at least partially remedy this situation. They amended Sec. 8324, now Sec. 52–584 of the 1959 Revision, to read, "No action to recover damages for injury to the person * * * caused by negligence * * * shall be brought but within one year from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of * * *".

Although lengthening the period of limitations from one to three years to make an accommodation for those cases where the "act or omission" and the "injury" are separated by a substantial period of time, the legislation did not avail the plaintiffs at bar because almost five years had passed between the sale of the fuse and the institution of suit.

The Supreme Court of Errors also presented a measure of relief, before the

584, Conn.Gen.Stats.1959 Revision; Vilcinskas v. Sears, Roebuck & Co., 1956, 144 Conn. 170, 127 A.2d 814.

■ Plaintiffs, however, seek to amend their complaints by adding a negligence count based on defendant's continuing failure to warn of the dangerous nature of the fuse. Once a responsive pleading has been filed, the allowance of such a motion to amend a complaint lies in the discretion of the trial court. Rule 15(a), F.R.Civ.P., 28 U.S.C.A.; Rogers v. White Metal Rolling & Stamping Corp., 2 Cir., 1957, 249 F.2d 262, certiorari denied 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 812. The complaint in this case was filed in August 1958 and the pleadings had been closed for two years prior to defendant's motion for summary judgment. In view of plaintiffs' long delay in moving to amend, the court would be fully justified in denying the motion on the ground of laches.[2] Wheeler v. West India S. S. Co., 2 Cir., 1953, 205 F.2d 354: Eisenmann v. Gould-National Batteries, Inc., D.C.E.D.Pa.1958, 169 F.Supp. 862; Portsmouth Baseball Corp. v. Frick, D.C.S.D.N.Y.1958, 21 F.R.D. 318.

■■ There is, furthermore, an even more serious objection to the requested addition to the complaint; it too is barred by the statute of limitations. The Connecticut Supreme Court of Errors, obviously seeking to ease the effect of the Vilcinskas decision[3], held in Handler v. Remington Arms Co., 1957, 144 Conn. 316, 130 A.2d 793, that the negligent failure to warn of goods which might be potentially dangerous, if defective, was a separate and distinct cause of action from any negligence in the manufacture of the goods. This former cause of action was characterized as a "continuing" one which "arose" at the time of injury, August 21, 1957 in our case. In Kelsall v. Kelsall, 1952, 139 Conn. 163, 90 A.2d 878, the Connecticut court held that an amendment which states a new and distinct cause of action speaks as of the date of the amendment and not as of the date of the original complaint. As Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 87 L.Ed. 1188, and its progeny forbid a federal court sitting in diversity jurisdiction from keeping alive any right which has lapsed under state law, we

---

statutory amendment, by recognizing as a separate and distinct tort the continuing failure to label or otherwise warn of the dangerousness of a rifle cartridge if defective. This being a continuing tort, the statute of limitations did not start to run until the injury to the plaintiff. Handler v. Remington Arms Co., 1957, 144 Conn. 316, 130 A.2d 793. This cause of action is the one that present plaintiffs attempt to assert in their amended complaints.

"* * * the plaintiffs waited nearly two years to move to amend the complaint and then made the motion only after a motion for summary judgment had been filed and argued. The plaintiffs should not be permitted to sit by for this period of time and attempt to bolster up their pleadings in answer to a motion for summary judgment when that motion has not been filed precipitately and when they have had ample opportunity to present their claims to the Court in a timely manner." Eisenmann v. Gould-National Batteries, Inc., D.C.E.D.Pa. 1958, 169 F.Supp. 862, 864.

In the instant case, the complaint was filed on August 12, 1958 and the answer of the defendant on September 26, 1958. The Statute of Limitations was, at that time, set up as an affirmative defense to the negligence count. The Connecticut case recognizing, as a distinct cause of action, the continuing failure to warn of the dangerousness of goods, after their sale, was decided on March 26, 1957—a year and a half before the filing of the complaint in this case.

2. "That federal courts have consistently tended toward increasing liberality in allowing the amendment of pleadings is a point which can only be belabored by discussion * * * But the issue nevertheless remains in the sound discretion of the court in the interests of the requirements of justice. Where there has been an unreasonable delay in amendment by the plaintiff to the prejudice of the defendant, a refusal to permit amendment is warranted." Portsmouth Baseball Corporation v. Frick, D.C.S.D.N.Y. 1958, 21 F.R.D. 318, 319.

3. See Footnote 1, supra.

must follow the Kelsall rule.[4] Ragan v. Merchant's Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. Plaintiffs' claim for damages for the alleged negligent failure to warn by defendant was barred as of August 21, 1958; their attempt to add that cause of action at this date is ineffectual.

Defendant also seeks a summary judgment on the warranty count, claiming that Connecticut law is applicable and that the holdings of the Connecticut courts clearly preclude recovery in an action on an implied warranty without privity of contract. Welshausen v. Charles Parker Co., 1910, 83 Conn. 231, 76 A. 271; Borucki v. MacKenzie Bros. Co., Inc., 1938, 125 Conn. 92, 3 A.2d 224; Hermanson v. Hermanson, 1954, 19 Conn. Sup. 479, 117 A.2d 840. Plaintiffs point out that there is a new "modern trend" in this area of the law to do away with the requirement of privity, Spence v. Three Rivers Builders & Masonry Supply, Inc., 1958, 353 Mich. 120, 90 N.W.2d 873; Prosser, "The Assault Upon The Citadel", 69 Yale L.J. 1099 (1960); and they urge the court to find that the Connecticut Supreme Court of Errors, if the question came before it at this time, would do away with the necessity of privity. See concurrence of Justice Frankfurter in Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 208–212, 76 S.Ct. 273, 100 L.Ed. 199.

■ Without reaching the question of what the Connecticut high court would decide on this problem today, the motion for summary judgment must be denied at this time. The first key issue on the warranty count is the determination of which law governs. The present state of the development of the case renders it impossible to make a firm judgment as to the applicable law. While it is probably a fair assumption that the fuse was manufactured at defendant's Con-

necticut plant, there is no indication where the contract was formally executed; where delivery was effected and performance made complete; where, if anywhere in particular, the contract was to have its "beneficial operation". All of these facts may have an effect upon the choice of laws determination. Surely these questions present a sufficient "issue of material fact" to warrant further proceedings in this case. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464; Arfons v. E. I. DuPont De Nemours & Co., 2 Cir., 1958, 261 F.2d 434, 435–436.

Defendant points to the Connecticut case of Barrett v. Air Reduction Co., 1955, 19 Conn.Sup. 500, 118 A.2d 629, 631, as requiring the granting of a summary judgment. That was also a warranty case; in granting a nonsuit on the strength of defendant's demurrer, the Court said,

"The allegations of the complaint are broad enough to permit proof that the contracts entered into by these two corporations were either made in Connecticut or, if made in New York, were intended to have their operative effect in Connecticut. In either case the law of Connecticut would be presumed to govern in the absence, as here, of anything to the contrary in the pleadings. * * * Furthermore, in any event, the law of New York is presumed for the purposes of the demurrer to be the same as that of Connecticut in the absence, as here, of anything in the complaint or demurrer indicating otherwise."

■ It is true that federal courts in diversity must follow the state forum's law of conflict of laws, Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 498, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 1941, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481; Wells v. Simonds Abrasive Co., 1953, 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211; it is also true that decisions of state courts

---

4. The pre-Erie "Federal rule" was actually to the same effect. See, e. g., N. & G.

Taylor Co. v. Anderson, 1928, 275 U.S. 431, 48 S.Ct. 144, 72 L.Ed. 354.

of original trial jurisdiction are often binding on federal courts for purposes of Erie; Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608; further, it has often been held that "presumptions" invoked in the local law of the various states, such as the res ipsa loquitur doctrine, must be followed by the federal court sitting on a diversity case. F. W. Martin & Co. v. Cobb, 8 Cir., 1940, 110 F.2d 159; Coca Cola Bottling Co. of Henderson, Inc. v. Munn, 4 Cir., 1938, 99 F.2d 190. These decisions, however, are not determinative of the issues in the present case.

■ Although the question before the Connecticut court in Barrett was one of choice of law, the court reached its decision not by application of substantive conflicts rules, but rather through the invocation of "presumptions"— from the pleadings and from omissions in the pleadings. Such presumptions are not "substantive" in the sense of shifting evidentiary burdens; they are more in the nature of judicial notice taking by the court.[5]  1 Moore 3520–22, Para. 0.316(3).  Moore says that "the consensus of present opinion indicates that the decision in Erie R. Co. v. Tompkins does not compel federal courts to follow state doctrines of judicial notice as to the law of another state". 1 Moore 3523, Para. 0.316(4); Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir.,

1947, 164 F.2d 290, certiorari denied 333 U.S. 863, 68 S.Ct. 745, 92 L.Ed. 1142; Zell v. American Seating Co., 2 Cir., 1943, 138 F.2d 641, 643, reversed on other grounds, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1552; cf. Waggaman v. General Finance Co. of Philadelphia, Pa., Inc., 3 Cir., 1940, 116 F.2d 254.

The rationale for such result has most often been that this realm is one of "pleading and evidence rather than substantive law", Peterson v. Chicago, Great Western Ry. Co., D.C.Neb.1943, 3 F.R.D. 346, 348; or that to carry Erie to this area of judicial notice is an "unwarranted extension of the doctrine". Baltimore & Ohio R. Co. v. Reaux, D.C.N.D.Ohio 1945, 59 F.Supp. 969, 974.

These decisions reflect the wiser course for federal courts. Adoption of the Connecticut court's "presumptions" in the present case would dangerously subvert not only the entire policy of liberal pleading requirements in federal courts, but also the proper application of the summary judgment procedures. If a litigant, through a too-broad application of the Erie doctrine, can lose his case at this pre-trial stage merely through his failure to plead in detail the law he expected to govern the case, the Federal policy of "notice pleading" and extensive pre-trial discovery tools will be effectively undermined in favor of the more technical niceties of an outmoded pleading system.[6]  Furthermore, if substantial issues of fact can be glossed over by the use of these doctrines which

---

5. This practice has been severely criticized in light of modern conditions of law reporting and modern trends in pleading requirements.

"The requirement that laws of states other than the forum be proved and the presumption of similarity have, of course, long outlived their usefulness and have been subjected to considerable criticism. In the United States it is a comparatively simple matter for the courts of one state to ascertain the laws of other states. Neither the language difficulties which originally faced the common law courts of England in applying foreign law nor the obstacles which prevented speedy and efficient dissemination of informa-

tion in the early days of the Union exist any longer." 1 Moore 3522, Para. 0.316 (3).

6. A similar situation has been recognized, in the application of the Erie doctrine, in the area of "burden of proof". While burden of proof is considered "substantive" within Erie and state rules are employed, Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 202, 84 L.Ed. 196. Moore strongly recommends that the doctrine of "invited error", invoked by some states to shift the burden of proof, be considered "procedural" for Erie purposes. 1 Moore 3509–12, Para. 0.314(3).

"'presume" that the law of the forum governs, little would remain of the judicial safeguards built into the Federal summary judgment mechanism since the promulgation of the Federal Rules of Civil Procedure. Arnstein v. Porter, supra. Nothing in this holding prevents the later application of Connecticut choice of law rules at a later stage in the proceedings.

Defendant's motion for summary judgment is partially granted as to only the negligence count; as to the count in warranty, it is denied. Plaintiffs' motions to amend their complaints are denied.