[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiffs, Robert J. and Karen E. Scott (Scotts), for breach of the express and implied warranties for new homes contained in General Statutes § 47-116 et seq., against the defendants, Regency Developers, Inc. (Regency) and Maisano Brothers, Inc. (Maisano). Regency was defaulted for failure to appear for trial. The case proceeded against Maisano on the merits and as a hearing in damages against Regency.
The court finds the following facts. On June 5, 1996, the Scotts entered into a contract with Regency in which Regency agreed to build a one-family residential home on land the Scotts owned. Pursuant to the specifications of the contract, Regency agreed to provide a paved driveway containing a base of ten feet of crushed stone compacted to four inches from the house to the street. Regency provided the base and subcontracted with Maisano to pave the driveway with asphalt for $5,500. Maisano laid the asphalt in November 1996. Soon thereafter, the Scotts notified Regency that they observed problems with the driveway, such as heaving 200 feet from the street, cracks in the asphalt near the street, crumbling by the garage doors and tire indentations in the turnaround area.
In Spring, 1997, Maisano re-rolled the driveway and installed a one inch cap at no expense to the Scotts. The Scotts continued, however, to observe problems with the driveway. Regency removed the top portion of CT Page 13682 the plaintiff's driveway and Maisano re-paved that portion.
There was unanimity among the witnesses at trial, both lay and expert, that the Scotts' driveway has defects. The expert witnesses further testified that the defects are primarily caused by an inadequate base. The plaintiffs' witnesses also testified that some or all of the defects were caused, in part, by unworkmanlike construction.[1] The court finds that the problems for which the plaintiffs seek damages are caused by the condition of the driveway base. The court further finds that the Scotts failed to prove unworkmanlike construction by Maisano. Even assuming, as the plaintiffs contend, that Maisano initially failed to pave the driveway in a workmanlike manner in 1996, the reality is that Maisano subsequently re-paved the driveway in warmer weather yet the problems persisted. The persistence of these problems after re-paving confirms that their cause was "deeper."
At trial, Edson MacLellan, the Scotts' expert, testified that Maisano generally does good work and that the Scotts' driveway is defective because of an inadequate and insufficient base. The same conclusion as to causation was reached by Maisano's expert, who testified that most of the problems with the driveway experienced by the Scotts were caused by an inadequate base. Thus, the only real issue raised by the Scotts is whether Maisano, a paving contractor with more than thirty years experience, bears the responsibility for the inadequate base.
Under the facts of this case, the court finds that Maisano did not have that responsibility. Both Regency and Maisano are professionals. In general, and absent a contractual provision to the contrary, a professional, whose performance depends on the quality of performance rendered earlier by another professional, is not responsible for deficiencies in the other professional's performance, unless he knew or should have known that the other's performance was deficient. Cf. Hymanv. Waas, 79 Conn. 251, 64 A. 354 (1906).
There was no evidence that Maisano had an express contractual responsibility to determine the adequacy of the base. Moreover, it is clear from the testimony that Maisano did not actually know that the base laid by Regency was inadequate. If Maisano had known, it is unlikely that it would have undertaken the subsequent remedial work it performed at no cost to the Scotts. Furthermore, the Scotts failed prove that Maisano should have known that the base was deficient. The Scotts' assertion that Maisano should have known that the base was deficient rests almost exclusively on the testimony of their expert, MacLellan, admittedly a respected paving contractor of many, many years. However, MacLellan's testimony in this respect is unpersuasive. First, MacLellan was roundly impeached in various respects. MacLellan assumed that Maisano had used a CT Page 13683 heavier asphalt roller than was actually used. MacLellan also testified that the asphalt was paved in weather that was too cold. On cross examination, he admitted that the portion of the driveway that was re-paved was done in the Spring when the weather was warmer. Second, the court is unpersuaded that the deficiency in the base could reasonably have been revealed by simply kicking it with one's foot, as MacLellan suggested. For example, the base might be adequate where it is "tested" by kicking it, as MacLellan suggested, yet be inadequate elsewhere. Where, as here, the general contractor informs the paving subcontractor that the base has been prepared and is ready for paving, the subcontractor should generally be able to rely on that representation, absent a good reason for doubting it.
The Scotts claim that, because Maisano conducted inspections of the base, responsibility for the adequacy of the base shifted to Maisano. This claim posits a proposition for which the predicate fact does not exist. Maisano did not undertake the responsibility of conducting an inspection of the base. It simply observed the base visually, determined that it was adequate from what could be seen, and proceeded to do the job for which it had been retained.
The court finds that the damages of which the Scotts complain were caused by the failure of Regency to lay a proper base and not by an act or omission of Maisano. Insofar as there may be imperfections in the driveway that may be ascribed to Maisano, such as the edges not being properly tamped down, the Scotts have failed to show what their money damages are."It was the plaintiff's burden to prove the damages which it claimed had resulted from the tortious acts complained of." UnitedAircraft Corp. v. International Assn. of Machinists, 161 Conn. 79, 100,285 A.2d 330 (19771), cert. denied, 404 U.S. 1016, 92 S.Ct. 675,30 L.Ed.2d 663 (1972).
There is yet another, overriding reason why the Scotts cannot prevail on the fourth and fifth counts of the revised complaint, the only counts directed against Maisano. Those counts are based on breach of the express and implied warranties contained in the New Home Warranties Act, General Statutes, §§ 47-116 through 47-121. For purposes of General Statutes § 47-117, an express warranty is made by a "vendor" to a "purchaser." Similarly, for purposes of General Statutes § 47-118, certain warranties are implied, as a matter of law, "[i]n every sale of an improvement by a vendor to a purchaser. . . ." (Emphasis added.) General Statutes § 47-118. The words "improvement," "purchaser," "real estate," and "vendor" are defined in General Statutes § 47-116. The New Home Warranties Act is a remedial statute. Four Beaches Condo v.W.C. Brescia Plumbing, Superior Court, judicial district of New Haven at New Haven, No. 384124 (May 23, 1997, Licari, J.). Remedial statutes "must CT Page 13684 be liberally construed in favor of those whom the legislature intended to benefit." Concept Associates Ltd. v. Board of Tax Review, 229 Conn. 618,623, 642 A.2d 1186 (1994). The issue here is who did the legislature intend to benefit in the New Home Warranties Act.
The Scotts contend that they are within the class of persons protected by the New Home Warranties Act. This contention conflicts, however, with the plain language of General Statutes § 47-116, which clearly defines a "purchaser" as the "original buyer, his heirs or designated representatives, of any improved real estate." General Statutes §47-116. The term "real estate" is defined as "any fee simple estate." General Statutes § 47-116. "A fee simple interest with possession, of course, is a whole or unlimited interest embracing all the elements of complete ownership." Redevelopment Agency v. Norwalk Aluminum Foundry,155 Conn. 397, 401, 233 A.2d 1 (1967). "Therefore, [b]y its terms, the [New Home Warranties Act] applies in situations where the vendor constructs the improvement on real estate owned directly or indirectly by him and conveys the improved real estate to the purchaser. The Act does not apply where a landowner contracts with a builder to construct a new home on real estate already owned by the landowner." (Brackets in original; internal quotation marks omitted.) Bouchard v. Boyer, Superior Court, judicial district of New London at New London, Docket No. 543089 (May 17, 1999, Hurley, J.T.R.); accord, Greene v. Perry, Superior Court, judicial district of Windham at Putnam, No. 57091 (July 9, 1999) (Sferrazza, J.); Jackson v. Fortunato, Superior Court, judicial district of Stamford at Stamford, No. 80096695 (July 31, 1996) (Ryan, J.);Pelletier v. Pelletier Development Co., Superior Court, Judicial District of Hartford/New Britain at New Britain, No. 463671 (March 14, 1996) (Fineberg, J.); Blonder v. Heath, Superior Court, judicial district of Tolland at Rockville, Docket No. 45252 (September 26, 1990, Jackaway, J.) (2 Conn.L.Rptr. 518).
There is no evidence that the Scotts purchased improved real estate from either Regency or Maisano. Neither defendant conveyed real estate containing the newly constructed improvement to the Scotts. Rather, the one-family dwelling and driveway were constructed on real estate already owned by the Scotts. Therefore, the Scotts do not qualify as a "purchaser," as that term is defined in General Statutes § 47-116. By its terms, the Act applies in situations where the vendor constructs the improvement on real estate owned directly or indirectly by the vendor and subsequently conveys the improved real estate to the purchaser. The Act does not apply where a person contracts with a builder to construct an improvement on real estate already owned by the former.
"Where the legislature has specifically defined an operative term used within a statute, we are bound to accept that definition; PlasticreteCT Page 13685Block Supply Corporation v. Commissioner of Revenue Services,216 Conn. 17, 27, 579 A.2d 20 (1990); unless to do so would create an irrational result that could not have been intended by the legislature."Weinberg v. ARA Vending Co., 223 Conn. 336, 349, 612 A.2d 1203 (1992). Limiting the word "purchaser" in accordance with the definition in General Statutes § 47-116 does not create an irrational result that could not have been intended by the legislature. The legislature could rationally have concluded that property owners who, in effect, purchase real estate and choose to act as their own general contractors can protect themselves by their own written contracts. Indeed, that is what the Scotts did in their contract with Regency. Since Maisano, however, was not a signatory to that contract, he is not bound by its terms. SeeAntinozzi Associates v. Arch Fracker Plumbing Heating Contractor,Inc., 39 Conn. Sup. 375, 379, 465 A.2d 333 (1983); Hermanson v.Hermanson, 19 Conn. Sup. 479, 482, 117 A.2d 840 (1954) ("for breach of express warranty there can be no recovery except by the person with whom the seller made the contract of which the warranty is a part").[2]
Judgment may enter in favor of the plaintiffs, Robert J. and Karen B. Scott and against the defendant, Regency Builders, Inc., in the amount of $15,000. As between the Scotts and the defendant, Maisano Brothers, Inc., the court finds in favor of Maisano. Accordingly, judgment may enter in favor of the defendant, Maisano Brothers, Inc.
Bruce L. Levin Judge of the Superior Court